J-S08025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JESUS CHUITO PAGAN, | : | |
| | : | |
| Appellant. | : | No. 503 EDA 2018 |

Appeal from the Judgment of Sentence, June 11, 2015,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0003753-2014.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 03, 2019**

As part of a September-2013 push to expand his Philadelphia market-share, heroin-dealer Jesus Chuito Pagan held a drug give-away on the streets of the Kensington neighborhood.  Free samples attracted quite the crowd of addicts.  The crowd, in turn, attracted the attention of Charles Jones and Justin Carter, community members concerned for the health and safety of the local children.

Mr. Jones approached Carlos Amoros, Pagan's mid-level dealer whose nearby home served as a drug-distribution center.  Mr. Jones asked Amoros to end the give-away.  Amoros agreed.

Overhearing this conversation, Pagan instructed his street-level dealer, Jonathan Maldonado, to give him a handgun.  Maldonado complied, and Pagan

_____

*   Former Justice specially assigned to the Superior Court.

opened fire.  The addicts began to flee.  Mr. Carter also fled, but Pagan shot him in the back and killed him.

The Commonwealth charged and a jury convicted Pagan of murder of the first degree and three lesser offenses.[1]  The trial court sentenced Pagan to life in prison without parole for the murder conviction and various shorter, consecutive sentences for the others.

Pagan appeals from that judgment of sentence.  Because the arguments in his brief are unpersuasive under our applicable standard of review, no relief is due.

Pagan's three claims of error are:

1. Did the trial court err by deeming the Commonwealth's witness, Carlos Amoros, unavailable to testify and permitting the Commonwealth to read his preliminary-hearing testimony to the jury?

2. Did the trial court err and cause him irreparable harm by permitting hearsay testimony from a detective?

3. Was the verdict against the weight of the evidence?

**See** Pagan's Brief at 4 – 5.  The first two issues challenge evidentiary rulings. The third challenges the trial court's refusal to find the verdict to be against the weight of the Commonwealth's evidence.

---

[1] 18 Pa.C.S.A. § 2502(a).  Pagan's lesser offenses were possession of an instrument of a crime, carrying a firearm without a license, and carrying a firearm in the City of Philadelphia.  18 Pa.C.S.A. § 907; 18 Pa.C.S.A. § 6106; 18 Pa.C.S.A. § 6108.

Pagan acknowledges in his brief that this Court's "standard of review with regard to admissibility of evidence and weight of the evidence is an abuse of discretion." *Id.* at 2; *see also Commonwealth v. Nelson*, 652 A.2d 396, 399 (Pa. Super. 1995) (indicating that evidentiary rulings are subject to an abuse-of-discretion review, rather than a *de novo* one); *and Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008) (holding that a trial court's ruling regarding "a weight of the evidence claim is the least assailable of its rulings"). An abuse of discretion only "occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa. Super. 2005). In other words, a reasonable judgment by the trial court – even one this Court might think is incorrect – is not an abuse of discretion, without something more.

In all three of his appellate arguments, Pagan pays no heed to our highly deferential standard of review. Instead, he first reargues his theory of why Amoros was not unavailable – i.e., that the Commonwealth did not make reasonable efforts to procure him for trial. *See* Pagan's Brief at 13 – 14. The trial court explained its finding of unavailability as follows:

> [Defense counsel] was provided with Amoros' statements and had the opportunity to cross-examine Amoros at the preliminary hearing on the areas of bias, motive to lie, and lack of credibility. Therefore, [Pagan] had the opportunity to confront the witness against him.
>
> Furthermore, the Commonwealth showed that it had not been able, by reasonable means, to procure Amoros' attendance at trial. [A police officer] personally served

Amoros [a subpoena] two days before trial and confirmed his intention to testify. [Multiple investigators] visited Amoros' residence and had spoken to his neighbors, wife, and family, but were unable to locate him. [The Commonwealth] was unable to locate [him] in custody, the medical examiner's office, or local hospitals. The Commonwealth also obtained a bench warrant for Amoros when he failed to appear.

* * * * *

The Court admitted Amoros' statement from the preliminary hearing, which is a formal legal proceeding where [Pagan] had the full opportunity to cross-examine the witness. [Pagan's] reliance on both **Commonwealth v. Mangini**, 425 A.2d 734 (Pa. 1981), at trial and **Commonwealth v. Lively**, 610 A.2d 7 (Pa. 1992), on appeal is misplaced, because the **Lively** standard was created in order to ensure "prior inconsistent statements were given under highly reliable circumstances to warrant admission as substantive evidence." **Lively**, at 10.

Amoros did not adopt his prior statement given to police during the investigation at the preliminary hearing and his testimony had internal inconsistencies. However, [Pagan] had the full opportunity to address these inconsistencies during the preliminary hearing. Furthermore, the Commonwealth presented Amoros' testimony, with limited omissions by agreement of the parties, by focusing on the inconsistent statements. The jury was free to assign whatever credibility it determined appropriate to this testimony. Thus, this Court properly allowed Amoros' preliminary-hearing testimony to be introduced at trial after finding that Amoros was unavailable.

Trial Court Opinion, 6/29/18, at 34-35. Pagan fails to articulate how the trial court abused its discretion in reaching its decision or that the above analysis is manifestly unreasonable, arbitrary, or the result of bias, ill will, or prejudice. We are therefore unpersuaded that an abuse of discretion occurred.

In his second claim of error, Pagan simply presumes that the detective offered hearsay testimony, even though the trial court ruled otherwise. *See id.* at 16. Pagan argues that ruling prejudiced him.

We do not reach the question of prejudicial effect until *after* we conclude an abuse of discretion occurred. By ignoring our standard of review and arguing only prejudicial effect, Pagan has put his cart before the horse. Pagan must first show that the trial court's allowance of the testimony was an abuse of discretion. He fails to do so.

Finally, in his third appellate issue, Pagan claims that the testimony of the Commonwealth's witnesses were "inconsistent and highly unreliable." *Id.* at 19. He also attempts to relitigate whether the jury should have heard the unavailable Amoros' preliminary-hearing testimony and the prejudicial effect of the detective's supposed hearsay. Pagan, however, never claims that the trial court abused its discretion by deferring to the jury's credibility findings or reasonable inferences. He simply reargues, *de novo*, for a new trial on appeal.

Pagan has failed to contend or persuade us that the trial court abused its discretion in any way. Accordingly, we dismiss all of his appellate issues as meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/3/19